their argument this morning in Case 24-1063, Hunter v. United States. Ms. Black. Mr. Chief Justice, and may it please the Court, all contracts are subject to defenses, so appeal waivers are also subject to defenses and can be excused in more circumstances than the two recognized below. The government argues that no contract defense can apply to knowing involuntary appeal waivers, no exceptions. But if appeal waivers bind defendants under contract principles, they can be excused under contract principles. A contrary approach is anathema to our criminal justice system. No appeal for sentences above the statutory maximum based on race, religion, national origin, tribal status, or peer vindictiveness. No appeal for pregnancy bans, castration, or compelled church attendance either. These scenarios are all real cases. Or take this case. Only the most paramount government interest overcomes the fundamental right to refuse medical treatment. But Hunter was sentenced to a mandatory medical condition even though he had no mental health issues, let alone one connected to the crime or related to any sentencing goal. Defendants bargained for caps on their sentencing exposure. Those bargains are destroyed by plainly unlawful sentences that are totally outside the realm of plausibility in either party. Now, Fledgate's concerns are belied by decades of experience in the 11 circuits that reject that this circuit's unlawful. Applying defenses to appeal waivers maintains the status quo. Contract defenses are narrow by design and rarely satisfied. Appeal waivers will continue to bar the vast majority of alleged sentencing errors. Guidelines, miscalculations, insufficient explanations, or misbalancing under 3553A. But contract defenses may be satisfied in the rare case of clear legal error and punishment unauthorized by statute or that violates the Constitution. At a minimum, this Court should remand on the second question presented. I welcome questions. Mr. Blatt, if you can waive constitutional rights or statutory rights, why can't you waive these contractually rights that are statutory here? You absolutely can waive the right to appeal, and there's an appeal agreement. But the issue here is absent this plea agreement, which is a contract, the defendant could just walk away. The only thing that is binding him to the waiver and the government is asserting the enforceability of the appeal waiver by contract. I don't think there's any dispute that the plea agreement is a contract. If you waive your right to trial at the arraignment and just say, I waive my fundamental right to trial, that's a pretty big waiver. Tomorrow you can get up and say, you know what, Judge, I think I want a jury trial. You can just revoke it. But here there's a plea agreement, there's a contract. The government has to rely on the contract principles. The government gets out of plea agreements by relying on contract offenses, and there's just no rational or it's just inexplicable that you would not apply contract offenses to this contract when you do to all others. In this case, could the government simply void the agreement and proceed with the ten counts? Yeah, I don't think so, but here's why. The government has, in many cases, asserted frustration of purpose and did exactly what you said. I think here, because the government has no interest and is not defending the mandatory medication condition, there's just no countervailing principles. Now, the government has not disputed. It can allege a breach of the plea agreement, and that would result in an invalidation of the plea. The government just doesn't dispute that. That's why defendants so rarely bring these appeals is because they run a substantial risk of exactly what you're saying. We would try to argue that there's no breach based on the fact that the judge told him he had a right to appeal, and even if it is a breach, it's justified by defending the contract exception, and the government doesn't have any countervailing interest to invalidate the whole agreement. And that's all the stuff we would fight on remand. Here we're cut off because the Fifth Circuit has this categorical rule that although it's a contract and you're denied the benefit of the bargain with sentences that exceed the statutory maximum, it allows no other exceptions. Counsel, it seems to me that you're really asking for an equivalent of a Miranda warning that somebody would have to give, the prosecutor, maybe even the judge, going through all the things that you're required to. What exactly, what are the elements of what they must, you know, defend it so that you don't leave any, you know, strings untied? So there's a distinction between the first question presented and the second question presented. If the judge said absolutely nothing, we'd still be here on a contract offense. There's no warnings. It's just there's 30 years of actually 34 years where this has been the law. We think in terms of the second question presented, all the judge has to say is that you may have a right to appeal. You should look at your plea agreement. That's it. There's no other warnings. There's no nothing. So that's the second question presented. But on the first question presented, we're just arguing there's the government is enforcing the plea waiver. We're saying it's subject to one of contract offenses or a miscarriage of justice exception. So that's all to brief on remand. This has nothing to do with what a court would have to educate the defendant about. Well, I think it does have to do with that, and it seems to me that the court is the only one that can do it. You know, if you're the defense attorney, I don't know you want to advise your client, of course. But, you know, if the judge says something that's not right, it seems to me that the lawyer's in a tough position because the judge has given them an opportunity to raise this after the fact, if you think. And so it would be odd, I think, for the lawyer to stand up and say, oh, Your Honor, remember you've got to tell him that he can't do this or this, or otherwise it might not be valid. So on the second question presented, we are literally arguing a straight litigation forfeiture waiver. All we're saying, this is on the second question presented, all courts hold what you just said, except for the Ninth Circuit. It doesn't matter what the judge says, except the Ninth Circuit. What we're trying to argue on the second question presented is when the judge said you have a right to appeal, given the back and forth on the medication condition, and when the prosecutor said, Your Honor, I believe, well, I know, that he, two things happened. One, the defendant detrimentally relied on that in bringing the appeal and exposed himself to a breach. And two, and I think the better argument is, had the prosecutor spoken up, we would not be wondering had the court imposed this bizarre medication condition thinking that there could be a right to appeal, and that's a simple remand. But that's the important question, is the first question presented, where all 11 circuits, this has nothing to do with what a court would advise. You just sign a plea agreement and there are broad waivers and that's it. Defendants don't bring these because it's an alleged breach. You do have these rare exceptions where it can be a contract offense or be a miscarriage of justice. The castration example, a pregnancy ban, the government's view, race, sex, mandatory medication, that tough, that's it, you sign the appeal waiver. That's absurd when everyone from Elon Musk to billionaires to corporations to mom and pops can assert contract offenses. The government doesn't even tell you why this contract, unlike any other contract in the entire universe, can't have a defense. Ms. Blood, I guess I'm trying to figure out what the nature of your argument is. You refer to contract offenses, then you say, or a miscarriage of justice exception. In the time you've been up there, you've said the question is whether it's outside the realm of plausibility. You've referred to constitutional violations. I mean, when is it that this would come into play in your view, more specifically? So hopefully almost never, because courts don't do crazy things like this. Well, but I'm asking for a standard, but what are we looking to? The standard is that the easiest and the high-level rule statement is it's subject to contract offenses. What is a contract offense? Does that just mean it's against public policy, or are you referring to other kinds of contracts? No, I'm going to break that down. There are hundreds of years of precedent on very narrow defenses that sound maybe in label broad, but once you take off that label, they all have a thumb on the scale, exceedingly thumb on the scale in favor of enforcement. That's why contract offenses are so rare, and if you go past the restatements, you start reading why they're never applied, including public policy. Public policy, as this court said in Rummery, the first public policy is enforcement of a contract. So you would have to have some really out there public policy that would outweigh that. Is there anything other than public policy that you're talking about when you refer to contract offenses? No, I think the one that makes – public policy is a good one because it's rooted in this court's case law. The one that makes the most sense is the one the government asserts, which is frustration of purpose. The government has gotten out of plea agreements in the two cases, both in the Fifth Circuit and the Tenth Circuit, because they said it was frustrated when a defendant didn't do anything wrong, but just got out on collateral relief. So frustration of purpose, why I think it's the best, and that's why I got the standard of outside the realm of plausibility. So, Ms. Blatt, I think you've got a strong argument on something like miscarriage of justice or something that's shockingly improper, something that would capture the examples that you started out with, where the sentence is based on race or religion or something like that. I think you've got a strong argument on that. When you go further, then I get nervous because public policy is very broad. Plea agreements have some attributes of a contract, but they're not like ordinary contracts. And imposing the entire law of contracts here seems to me rather open. Okay, then can you please say the entire law of contracts does not apply to the government? Because that's all they do is cite contract law and enforce these plea agreements. So make sure you write your decision that they're not enforceable either under contract principles, that the government can't rely on it. It's a double standard, including in the Fifth Circuit. All right. Well, what do you, in concrete terms, what do you think the law of contracts would say about a variety of issues that might be waived? How about constitutional venue? I don't know what you mean by that. Sixth Amendment venue. So all I'm talking... The right to be tried in the state or district where the offense occurred. I mean, waiver, you have a million cases on waiver. In terms of this case involves no waiver of a trial right. This is involving a waiver of the right to appeal sentencing errors. And the courts have generally said miscarriage of justice, but all of, at least eight of them, have said contract principles. What about the Sixth Amendment right to a speedy trial? Well, you have cases on all of this about the waiver has to be knowing and voluntary, and then you have to decide if it's a personal right versus a public right. What about the suppression of evidence under the Fourth Amendment or the Sixth Amendment? You waive all that when you waive your right to trial. A defendant can almost never get out of a plea agreement. You've held back in, I think, 72 under Brady that plea agreements are binding and they waive the right. The only way to get out of a plea agreement, you have cases on that.  Loeffler. You actually have Supreme Court cases that say you can almost never get out of a plea agreement. Ms. Blatt, I thought the only thing before us was waiver of sentencing errors. Correct. Not anything else. Correct, because you have a million cases saying defendants can't get out of plea agreements. On Justice Alito's point about whether these are ordinary contracts or not, if they're not, we might think about unconstitutional conditions doctrine in this area, too. I was a little surprised we didn't have more of that in the briefing before us, and I'm kind of curious why. I mean, as I understand it, the defendant here pleaded guilty to one count of fraud for $32,000. That was the only amount charged in the indictment. Then he wound up being sentenced for something like a half a million dollars worth of fraud and a whole bunch of other unindicted incidents. And it's not clear to me what benefit he got from his plea waiver, appeal waiver, I should say, that would be proportionate and have a nexus to that additional right foregone. So let me just, and I think this captures Justice Alito, a lot of defendants are unhappy with their sentences, and they're mostly guidelines, but when they're within the statutory maximum, courts have universally said, tough luck, that part of the appeal waiver is the assumption that the court will make ordinary errors in sentencing guidelines as long as you're sentenced within the statutory maximum. The government's view is you can sentence someone for 30 years for a misdemeanor, and there's no right to defense. Now, they want to try to rely on maybe something in the contract, but that contract provision doesn't say what the government says, so, nor the Fifth Circuit. The Fifth Circuit, I mean— With respect, Ms. Blatt, do I get an answer to my question about why we don't have an unconstitutional— The sentence seemed, I mean, 51 months and all the fine. I don't think he, because we're just, I mean, yeah, the defendant's not happy with the sentence. Most defendants aren't, but they're within the statutory maximum, so I think that's the answer. The condition of probation, I'm sorry, the condition of supervised release is the preposterous one that says you have to follow the recommendations. One might argue, though, that that's an unconstitutional condition to be required to give up a right of bodily integrity without a compelling showing by the government. Any showing. Any showing. I mean, it's just totally bizarre. The government doesn't defend it. I'm going to get this example out. If there was a law that was passed that said all judges must take antidepressants recommended by their physician, I think you would find it stupidly unconstitutional and  I think we already have. And it might be medically appropriate to take antidepressants. It doesn't matter. That is the problem, that you couldn't really raise Justice Gorsuch's very significant point because there is this waiver. Like, the unconstitutional condition, I think, is an argument that could be made in the context of an appeal when you were trying to say that the trial judge or the sentencing judge did something wrong. Yes. The problem is you have a waiver, so you never even get back to it. You can't raise it. That's what I was trying to say to Justice Kagan. In the universe of reading all of these cases, the Court of Appeals, first of all, defendants don't bring them because they don't want to get turned around and have the plea agreement breached. The lawyers don't want to bring them because they've been sanctioned. And third, the Court of Appeals don't want to see these cases because they have to deal with it and that's why when you read them, they say this is going to be rarely applied. Please don't bring them. It has to be an extreme case. It might be rare, but usually we have a standard. What are those rare cases? How do we identify them? And that's what I'm trying to figure out. Now, you said, well, you could definitely argue if it's above the statutory maximum, but the Fifth Circuit actually seems to agree with you. So on that one, you're in the same place as the Fifth Circuit. So what else? And how do we identify these errors? And I guess maybe the backup point is, is this really a place where we should look to contract law or is it a place where we should just say, yes, we should have an exception for miscarriages of justice? And people know what that means and know that it refers only to extreme cases. And what I've distilled, which I think is a really good standard, is first, the error has to be obvious, like clear and indisputable, like no even argument on the other side. It just has to be a really bad mistake, whether that's in excess of the statutory maximum, the case involving Judge Strauss in the Eighth Circuit. It was a person who possessed a gun. The court imposed a very bizarre, unrelated, weird condition that he had a lifetime ban. It just kind of came out of nowhere. Those are clear errors. Now, once you get past clear error, like if you're having an argument about it, the defendant is just going to lose. But when it's a stupid clear error, that's one. That's the first gateway. The second gateway is exactly what you said. It's got to be really bad. And what I said, what really bad means is it's just so plainly unauthorized by statute or a violation of a constitutional right, which covers race, First Amendment, religion, bodily integrity. But there is another option, isn't there? I mean, in addition to those possibilities for saying this waiver is unenforceable, isn't there the option of saying that we really just don't allow these kinds of waivers? In other words, that it's not, for example, knowing involuntary for a defendant to prospectively waive his right to object or to appeal a sentencing error. And so they're just not enforceable. I know you don't make this argument, but... No, I like it that you have a case kind of against me on it. So the knowing involuntary just says you have to know, you know, you know all about what the waiver of the right to me. And you don't have to know the consequences. So that's why... I understand, but there are district court judges, very thoughtful district court judges, who have accepted the view that this is different than a trial waiver that, you know, goes with your guilty plea. That there's something unique about the prospective waiver of a sentencing proceeding that you know is going to happen, but you're giving up your right to appeal any errors with respect to that proceeding. That that's just, you can't knowingly have that kind of waiver. Some courts have said... The Fourth Circuit in 2025 in a case, Smith cited by Cato, does exactly what you said. It said, this cannot possibly be a knowing involuntary waiver, but we're going to also apply miscarriage of justice. So they did the two steps, but they said what you said. I just don't know if the rest of you would agree with that analysis. They said exactly what you said. What are the specific exceptions that you would identify? Ineffective assistance to counsel. So that goes to knowing involuntary. And then... Sentence exceeds the statutory maximum. Yes. And unconstitutional factors used in the sentence. Yeah, I would just call that violates the Constitution. Well, those are three. No, there's two. Well, I listed three there, but... Hold on, let me just... Can I combine them into two? So the unauthorized by statute, the problem with the Fifth Circuit is, you know, you could have... What that means. You could have restitution unauthorized by statute. In the case of the Eighth Circuit, they applied a lifetime ban on certain things for this kind of... It was just unauthorized by the statute. To me, covers a little more than sentences exceeding the maximum. Also, this condition of supervised release, if it was you have to go to church, it's just not allowed by statute. It's just... And it's plainly unconstitutional. So supervised release conditions, I think, do present a different bucket. And I just wonder...  How would you characterize what the exception for conditions of supervision... Oh, I'm just unconstitutional. You could say it exceeds the statute. The statute is very broad about reasonably necessary. It's just got a lot of yada, yada, yada about kinds of stuff. But when it gets to this kind of stuff, which is just weird stuff, like, you know, go to church, castration seems a little bit outside the statute. One of them said the defendant was getting so many women pregnant out of wedlock as a federal court and said, if you're going to get someone pregnant, can you please make it your wife? You know, you just can't do that. Come on. That's silly. Counsel, how much of this... You just can't do that. And that's unauthorized by the supervised release statute. And then anything beyond that? I just want to have a defined list if we're going to do this. So what cabins it is the first part. You can't just say, well, I don't want to talk to my probation officer every day because that violates my free speech. You're not even going to get past the first gate, and you're going to run the risk of getting sanctioned. So all that kind of garbage is out. And then you, if I could finish, in your beginning, you said clear legal error. And now that seems to open up, because everyone thinks their legal error is clear, open up a wider box. And I just want to make sure. No, because you can say, like, mandamus, clear and indisputable, clearly established, plain error. The error has to be obvious, clear. And that's what the courts below say. You can even say it louder. I mean, you get to say what you want. Well, some courts say that, and some courts don't. That's why we're here. I will be honest. Some are really broad and just say any illegal sentence. And guess what? There's no flood. There's no appeals. There's 30 years of this. I'm not disputing you. These are not hostile questions. So, okay. The thing is, I trust the system on the three systemic reasons, because there's an appeal waiver. And the court of appeals don't want to see these, and lawyers, you know, are very careful in bringing them. On terms of clear error, I do think it's, like, the second prong of a lot of it's just plain error. It's easy. It's applied every day in forfeiture. No one has a problem misunderstanding that. Essentially endorsing the Fourth Circuit's test, which is a fundamental constitutional or statutory right that was firmly established at the time of sentencing. Is that what you're saying to Justice Alito? I like that. I mean, yeah. That sounds good. I hadn't heard that one. But, yeah. But I just think in terms of Justice Alito. Fourth Circuit's. That's the Fourth Circuit's standard. I'm just trying to get Justice Alito's vote. And what I'm trying to say to Justice Alito is I care about the rest of you, too, but — Thank you very much. Very few advocates have that. I'll just stop there. Goal. Ms. Black. I'm trying to figure out how we articulate this, okay? You've come in with the simple proposition that ordinary contract principles, defenses should generally apply. There might be some — The same standard the government has. The same standard the government has. And that's not just frustration of purpose. Because frustration of purpose means both the procedural and substantive components. And you may not have a procedural component in this kind of waiver. But I think the other defense are public policy. It's against public policy. That's the rationale for statutory maximums, which is Congress has said you should only receive a sentence of X amount, okay? Yeah, for separation of powers issues. Exactly. I think it depends on your comfort level with those two words. A lot of people freak out at that word. I don't. But I don't either. And the applied duty of good faith, that has to do with a judge doing what he's supposed to do. And that subsumes unclear — that subsumes clear error. It subsumes constitutional error. And is a heavy thumb on the implied party's expectation that the contract would be enforced. So what I think what the government — the scare tactics, they sound really broad. They're not. Because if you just read one Delaware case, it'll tell you the implied covenant of good faith has to mean — Let me just stop you on all of this discussion.  Arizona, Minnesota, California, and Texas, all of their high courts say that a prospective waiver of a not yet imposed sentence is not enforceable. All right? When the defendant does not know what errors, if any, that there could be. Because they're not giving up a right —  Unknown right. You haven't argued that. It may be too much water under the bridge. But there is a strong argument, by the way, and it goes back to something that Justice Gorsuch was referring to, on the sentencing guidelines, the reports when the guidelines came out said we're permitting appeal waivers because appellate review of sentencing is essential to ensure that the guidelines are applied properly and to provide case law development of the reasons for sentencing outside the guidelines. Yeah. Guideline errors are just going to be out. I know, but don't give up so easily. Let me just break it down. Let me just come — Oh, sure. Let me finish my question, okay? Yeah, I'm sorry. You want to correct me along the way, but — No, it's wonderful what you're saying. Keep going. The reason why Justice Alito's arguments about trial errors doesn't work is because you are giving up some known defenses to a trial. You can look at all of those things. You can imagine them, and you can say, whatever they are, I'm going to give them up. So those are never considered, the trial-related errors. What we're talking about is sentencing errors, which is at a time where you don't know what the judge is going to do, and so you have to make certain presumptions. One of them is they're not going to act outside of their constitutional or statutory duty. That's your argument, isn't it? Yeah, I can tell you, I did think about what you said, because you can make an argument, like in all your cases, Mezzanotto's the best one that explains what you can waive. And basically, personal rights — this goes to Justice Alito — personal rights can be waived. Now, you get to a certain point where there's a public interest in the actual right. And what we are trying to say, when courts go so outside the bounds of what anyone could have been thinking, government can't even defend it, it's implausible. There's something to be said for the criminal justice system not bringing itself into disrepute and having these embarrassing sentences out there, and the judiciary has certainly the authority or duty to correct them. So you can analyze it under Mezzanotto, but it just seems like a higher hill to climb. Thank you, counsel. Just one brief question. How much of this could be taken care of under the one ground that everybody seems to agree isn't waived, which is ineffective assistance of counsel? In other words, if you weren't advised by your counsel that this is what could happen, if I say, yes, go ahead, I agree with the — to waive — allow the court to set sentences part of the pre-sentence of the agreement. Because there's no fiduciary duty to say, and it's not just within the realm of plausible. In effect, this is the counsel's who are waiving the rights to appeal. You would have to say, and I just don't think it makes sense, that I have a fiduciary duty to tell you this judge may impose a death penalty and order castration. It's just not — That's why I said in many cases, not all of them — I mean, I don't know, for example, maybe this is a good example where the counsel presumably knows a little bit about his client and he could advise him, look, you have to understand that if you accept this agreement, they may require you to take medication. And if he doesn't, then maybe that's something that can be brought as an ineffective — With all due respect — Maybe I'll finish my sentence. If it doesn't, maybe that's something that could be brought as an ineffective assistance claim that would allow him to get out of the sentence. I don't think that would succeed because it was not ineffective and this guy doesn't — there was no mental health condition. He did it for the assistance. The probation officer just said it might be easier if this guy were medicated. That's preposterous. I mean, it might be easier if you were medicated, too, for my job. It just — that's not how you get to medicate people. Thank you. Justice Thomas? Justice Alito? Well, let me begin with Justice Sotomayor's rebuttal of what she took me to be asking about regarding constitutional rights. Now, she will have the right to serve a rebuttal, which I won't have a chance to answer under this questioning regime that we have now. The Fourth Circuit test, which you seem to agree with, as I understand it, was any important constitutional right. So that wouldn't be limited to sentencing errors, would it? It would encompass all of the things I was asking about before. No, we're just talking about the appellate right on the sentence. Okay, we're just talking about that. Yeah, that's all — every circuit, the whole circuit split, is about when you can appeal sentences. So as Justice Jackson said, these are all things you, you know — So anything that wasn't known prior to the time of sentence.  Again, I tried to say with Justice Gorsuch, it has to be clear. So when you have an unconstitutional right to not go to church, it just seems ridiculous that a lawyer would say, by the way, you're sentencing this, I know you're religious, so there might be a chance that Supervisor Lee, he's going to think you're a religious fanatic, and say don't go to church. And all we're saying is, come on. Okay, what if it's a sentencing issue that was known by the parties before entering into the court? Yeah, so all of that would be factored into any contract offense. It would be factored into miscarriage of justice. That's why guidelines are all out, is because it's known at the time of sentencing that, you know, you could be sentenced up to the statutory maximum. It really doesn't matter what the guidelines say. What about guidelines issues during the period when compliance with the guidelines was mandatory? Oh, I think that that would have been — I mean, now you're taking me back — That's a sentencing error. Yeah, you're taking me back to pre-Booker, so — no. No? I don't think so. Sentencing guidelines is just something that happened. Now, we could talk — It was above the statutory maximum, because the statutory maximum was defined by the mandatory guidelines. Yeah, and we — look, we could talk about that, but we don't need to, because it's advisory, and all courts have said sentencing errors are out. And if you write this opinion, you can say that, too. So that way — What if the guidelines call for a sentence of six months' imprisonment, but the judge says that's woefully inadequate? In any way, they're not mandatory. Thirty years. Right. Some of you could leave open a miscarriage of justice, but I just wouldn't, because courts have just said they don't want to see sentencing errors. But, yeah, sure. Do you want to say they so misapplied the criminal — whatever it's called, the criminal career offender one, where you get this massive bump? I just — courts really don't want to see those. They just want — look, up to the statutory maximum, guideline errors are out. Okay, one final question. If we're — no, maybe not the final one, but if we're going to apply contract law, what body of contract law do we look to? It's not the same everywhere. Yeah, you look to the same that you would look every time you apply contract law, including in Rummery. You look to the restatements. You look to centuries of case law. We look to the restatements. That's what you did in Rummery. You cited Restatements 171, and that's what all the courts have done. I mean, you have — the court said, held, we'll apply, you know, general common law to contracts. But you have so many cases. You have collective bargaining agreements. We cite a lot of cases in the brief where you're applying contract law. Remember, the government is always applying contract law. I don't know whether they're citing the state that they're in or they're citing — I don't think the cases really care. All contract offenses are so narrowly circumscribed that — and the Court of Appeals is 34 years, not even a trickle, much less a flood, a river. Thank you. Justice O'Meara, anything further? Justice Kagan? Justice Gorsuch? Justice Kavanaugh? Just to share on a few things. You are not arguing that appeal waivers are impermissible across the board, correct? Absolutely not. And if that were to be the case, presumably Congress or the Rules Committee would have to do that. Yeah. I mean, you'd have to go through the analysis, Justice Sotomayor said, and you already have that Brady case that says you can plea. So I think it's just not going to win. And then notwithstanding an appeal waiver, you can appeal a condition of supervised release if, if you could fill in the blank, just to summarize.  I mean, the easiest for me is just it was not within the realm of plausibility of either party. So I would take into account the government's expectation that supervised release is no fun. But you have some of these conditions, and we've talked about them. It can't include who you get pregnant with. That's just no. But obviously you want a broader standard than that. Is there a phrase you would use for the broader standard? Oh, yeah, it just violates the Constitution. And it was not within the realm of plausibility. Government has no justified expectation in the enforcement of that condition. I mean, all these conditions, the government would look ridiculous saying, well, yeah, no, we really need to do that. And then last, I just want to confirm this. You just said this to Justice Alito, that misapplying the guidelines, procedural or substantive unreasonableness, would not be a basis. Not under any contract defense or any, like any public policy, or not miscarriage of justice, because it's always within the reasonable expectation that the court could veer off from the guidelines and impose under the statutory maximum. And this is what the courts of appeals have held. So I'm just parroting what's already been held. I agree. Thank you. Justice Barrett? So there's a lot of intuitive appeal to the contract analogy, especially because it's used for the underlying pre-agreement. One thing that concerns me, however, is that at least on this question of appeal waivers, I don't understand any of the courts of appeals to go all in on this contract analogy. And it wasn't fleshed out below in the Fifth Circuit. And I think you've had a lot of questions today exploring how there could be difficulties with it. So it seems kind of risky to go all in on this contract thing. So I guess three responses. One, as always, you're correct. It's fair. Only eight circuits have applied contract law to pre-agreements generally, and they're not, I think, maybe only the Tenth Circuit and the Second Circuit has talked about this in terms of defense. So you're just 100% correct. Number two, ironically, that is the Fifth Circuit. The Fifth Circuit's rationale for all of this is you can always appeal above the statutory maximum because the defendant didn't get the benefit of his bargain. I mean, that's too broad, and it kind of, you know, it makes the Fifth Circuit's decision just not defensible. But they say over and over again that's not what the defendant bargained for. So we've already gone down that crazy, you know, open-ended route, and so I — Well, Judge Bevis wrote an opinion in the Third Circuit that located the statutory maximum thing in separation of powers and said you'd be going beyond the sentence. So just because the Fifth Circuit said this would be beyond reasonable expectations of the bargain doesn't mean that that is, you know, what we would have to say is the rationale for that exception if we accepted it. I think separation of powers is good. It's just, you know, for the Constitution, you have to get a little more tricky with why that, you know, outside of Article III power for a supervised — you know, a supervised — condition of supervised release that's just absurd, unconstitutional. Well, and here's another question I have about the contract analogy. It doesn't seem to me like a lot of the exceptions that we're batting around really fall within contract offenses. It's almost like we're trying to shoehorn them in. I disagree because I've argued two cases in the Delaware Supreme Court, and they're all about expectations of the parties, and one side usually wins is I expected the contract to be enforced as written. The other side has to really get out of it by saying it's so outside the realm of industry standard or so outside the realm that anyone could have thought of, that anyone could have — Yeah, but what about the other ones, like what's the analogy for miscarriage of justice or — I mean, that is grounded, I think, in systemic concerns, maybe constitutional concerns.  That reflects the fact that this isn't a pure contract between the prosecutor and the defendant, but the judge is involved because the judge signs off on it. But that doesn't map on. Correct. And I think the statutory maximum thing, you know, OK, well, maybe we can talk about it. I mean, nobody's really put it in those contract terms. Maybe the Fifth Circuit has gestured that way. And I think — And what — let me just finish part of it. Sure. What rationale would there be for us not taking every possible contract offense that could come along or limiting it to certain ones? I take it you would say no, any contract offense from the restatement would be on the — Justice Breyer, with all due respect, whatever the government can do, the defendant should be able to do. The government doesn't get to just say, I can only look at three principles of contract law and interpreting the contract, and the defendant has a different rule. I mean, that's just — just whatever Elon Musk could get, a criminal defendant has to be able to get under a contract. But, Ms. Blatt, and I haven't looked at all the cases in which the government is saying that or alleging breach. I know Judge Easterbrook said that before and invited the government, essentially, to allege that there was a breach when the defendant appealed. But in all of these contract analogies, you're looking at the term itself and asking if the term itself is, say, unconscionable. And you're not arguing here that the term, that the waiver of the statutory right to appeal, that term is not void against public policy. Correct. It's not unconscionable. You're talking about one narrow circumstance, which is the application of that term. So it's not really like the contract itself. Well, so, A, you're absolutely correct in terms of what Justice Kavanaugh said, but in every contract, again, over and over we cite cases involving government contracts where a third party has to apply that provision. And there's just defenses that apply when the third party goes off the rails. But unconscionability, I think you're right, it's tricky. So the only way we would get there, unconscionability I haven't seen applied. The only way you would get there is in the government's view. This contract literally says you waive your right to appeal no matter what, no matter how many body parts they remove for you and no matter what the court sentences and no matter what the contract says. And all we're saying is, oh, come on, there's got to be a contract defense to that somewhere. Okay. Last question. This is just a factual one. As I understand the record, the district court said at sentencing when he objected to this medical condition, medical condition of supervised release, that, listen, if you go and get treatment and they do prescribe drugs that you have to take, talk to your probation officer, and if that's not fruitful, you can come back and see me. Did he go back to see the district court? No, he just got out of jail, and he now is under an ordered mental health treatment program. Now, there's something slightly comical about that because Mr. Hunter thinks he will go to hell and thinks God has told him he can't take drugs, which is why he doesn't drink. That conversation is going to be a little difficult with the judge. Okay, really, God tells me no, and whatever that medical manual is says it's indicated. I just don't see that conversation working out too well. But if it does, I mean, I don't know what this goes to, whether you think it's not a violation. Again, I'll get a really bad law if all women have to. No, no, no. I mean, I just wanted to know. I wanted to clarify that factually that could happen because I do think that gives him some recourse to go back to someone in the judicial system to ask. Not really because if the court says no. But the court didn't say no here. He didn't go back.  But there's, again, he has the threat of imprisonment if he doesn't take the drugs. I mean, that's bad. Justice Jackson. So when I'm thinking about this, I am mindful of the narrowness of the question presented as you have set it forth. You say whether the only permissible exceptions to a general appeal waiver are for claims of an ineffective assistance of counsel or that the sentence exceeds the statutory maximum. I suppose we could answer no to the extent that we see other exceptions that some of the other circuits have accepted and we think those should be allowed as well. This questioning that you're getting is, I think, an effort to say what we could offer more than that, what exactly are circuits supposed to be doing, and you point to contract principles. But I guess that doesn't necessarily have to be where we go with this, right? Correct. I mean, the question presented is the Fifth Circuit is obviously wrong. Please reverse and let us try to get a defense. But because there was questioning about, well, what will that mean on remand? But, no, you just need to say the Fifth Circuit's rule is indefensible. Yes, and I guess let me just add one thing or ask one thing about the conversation with Justice Kavanaugh. I guess I'm not sure that Congress or the Rules Committee would necessarily be the only body that could determine whether these kinds of waivers are categorically unenforceable. I would think that based on our case law and sort of standing principles about knowing involuntary waivers, that this Court could perhaps avoid the concerns about picking a particular set of waivers, which, I mean, excuse me, exceptions, which ones, are they contract principles or whatever, if we could be, enough of us, persuaded that in a circumstance where the defendant is pleading guilty and we know a sentencing hearing will happen, it is not sufficiently knowing to have a waiver of any errors that are going to happen in that sentencing proceeding, that it's just not an enforceable thing consistent with our understanding of knowingness and voluntariness with respect to the exercise of one's ability to make a waiver. So, A, correct, and B, that's the law that Congress passed in 1984, was that you could bring appeals. Appeal waivers didn't even become boilerplate until the late 2000s. So we had a world in which you could just appeal your sentence, there was no flood. And it's hard to see, really. But I'm not going to get any votes for this. No, I understand. You don't want to waste your time. No, it's fine. I love what you're saying. And nothing bad would happen, too. You feel it's not productive, but my job is to make sure that all of the issues are being taken into account when the court decides what they're going to do. Oh, I think you can get there. My point is that when we're thinking about what a waiver is and we're trying to understand the circumstances and we're balancing the public policy issues on both sides, I'm going to ask the government, what are they gaining out of ensuring that people don't appeal obvious errors in their sentencing? Like, what's the public policy interest in that? So all of those things might lead one rationally to think it's really not worth the candle for us to try to parse out exactly what kinds of waivers in which situations we would allow or not allow, as opposed to just saying we're not going to allow this sort of thing because of the knowingness and voluntariness problem. I mean, as I sit here, I kind of like what you're saying, and I actually think it's a way of looking at it because nobody brings these appeals, I think, from the government, just putting the government hat on. They just don't like the guideline appeals because people get their advisory and if the court goes above it. But you could get all the same way and say, well, that has to be knowing because everyone knows that the guidelines are advisory. Just in terms of the state of the law now, it's just not that bad for the government. They just don't, okay, thank you. Thank you, counsel. Mr. Coby. Mr. Chief Justice, and may it please the Court, knowing and voluntary pre-sentence appeal waivers are enforceable bargains and no doctrine of contract law calls for a different result based on the subsequent sentence that the defendant receives. Petitioner asks this Court to create new substantive limits on the enforceability of those knowing and voluntary waivers, but he has provided no administrable limits on which waivers should be in or out. The litigation that would inevitably follow under his front-line approach would essentially eliminate all appeal waivers. As a fallback, Petitioner proposes a safety valve to appeal waivers for the most egregious sentences. But without more real-world evidence of the most far-fetched hypotheticals, this is a solution in search of a problem, and it's a solution that comes with costs. An amorphous exception for egregious sentences will also invite litigation over what is egregious. Such litigation will deprive the government of the benefit of its bargain, thus making appeal waivers less valuable as bargaining chips for defendants. In all events, this Court should make clear that there is no exception that would permit Petitioner's appeal, rather than simply remanding, as Petitioner suggests. No injustice would be worked by dismissing Petitioner's unripe due process claim, but remanding would signal doubt on that score to lower courts and litigants, opening the floodgates to garden-variety waived appeals like Petitioner's. Finally, this Court should reject Petitioner's argument as to the second question presented. The district judge's statement that Petitioner had a right to appeal was accurate under the terms of the waiver and circuit precedent, but even if it were not, the government's non-objection to a misstatement by the district court did not modify or waive the party's written appeal waiver. I welcome the Court's questions. If this Court says that the agreement is void, would a remedy that would eliminate the underlying agreement be that you totally eliminate the plea agreement? I do think there is a possibility that if this is an essential part of the bargain and if we are not getting our part of the bargain, then we don't have to enforce our end of the bargain either. I think Petitioner has argued that the possibility that we'll reinstate the dropped charges is enough of a disincentive to stop the floodgates of waived appeals, but in practice that's not actually much of a deterrent because it's not an option we avail ourselves of all that often because our whole point in bargaining for an appeal waiver is we want to bring finality to the proceedings and we want to stop spending resources on it. So the idea of having recourse to go back and reinstate the charges is kind of at that point. So in this case, though, just confining it to this case, what's the disincentive to allowing an appeal here? I mean, that is our whole concern is that if you open the floodgates to sort of a broad miscarriage of justice exception, there isn't really a powerful disincentive and we will, in various cases, be deprived of the benefit of our bargain because we'll have to be litigating whether this exception, amorphous exception to appeal waivers, applies. I thought you said that it wouldn't apply in particularly egregious cases. Did I mishear that? That's correct. I mean, our front-line position is that there should not be an exception for even egregious miscarriage of justice because the petitioner has argued this case based in contract doctrine and we don't think there's a basis in contract doctrine for that. If this court goes the route of wanting to have a miscarriage exception for reasons other than contract law, maybe some kind of sort of federal common law policymaking or constitutional, we would very strongly urge this court to define whatever that exception would be very narrowly and to make clear it doesn't apply here. So all of the hypotheticals that Ms. Blatt presented us, you're comfortable defending all of those? Our front-line position, yes, is that the appeal waiver is enforceable. To me, that conveys the notion that you're ready to retreat. I'm not ready to retreat. Our position is that the appeal waiver is enforceable. So the order that you only make your wife pregnant or with all the other examples, you say that's fine? Yes. Our position is that that's enforceable and I recognize that sounds like a very harsh result, but I don't think it's a real-world concern. A racist sentencing judge? Again, our position is that it is enforceable. A sexist sentencing judge? Yes. Someone who is biased against religious minorities? Yes, the appeal waiver is enforceable. How will that stand? Because the point is that at the time that we're deciding whether to enforce the appeal waiver, all we have is a claim that there has been this particular type of error and what the defendant has given up as part of the bargain is the right to bring that claim. A sort of disrepute on the federal judiciary that Judge Posner talked about, if you held a trial with 12 orangutans, was his example, that that would have to be resolved. And I think we would all agree with that, right? But here you say any sentencing error of any kind. So, to be clear, an appeal waiver is not an agreement to receive an unlawful sentence. You couldn't agree to receive trial by 12 orangutans. That would be an unlawful bargain. It is an agreement that the final decision-maker on your sentence will be a district court rather than a court of appeals. It's a district court who says I'm going to let an orangutan pick a sentence out of a hat. And you would say no right to appeal that. The district court remains oath-bound. It is a bargain that at the time you're entering into it, all you're agreeing to is that the district court will be the final decision-maker. That is not a bargain against the law. The law already tolerates the possibility of even agree to sentences going unreviewed because it has given defendants the choice whether to bring an appeal or not. If the law did not tolerate that, we would have a system of automatic appeals, as many states do, for example, for capital cases. And you talk about opening the floodgates, but you're the one who's proposing a theory that no circuit has ever accepted. Yours is even more limited than the Fifth Circuit. You're saying only IAC as it relates to a knowingly or not knowingly enter a plea is cognizable. The statutory maximum, you're saying, is not cognizable either unless the plea agreement tells you that the judge will sentence within the statutory maximum. Because the logic of your argument is if I agree, if I say in the plea agreement, the judge can sentence you any way he wants, that would not be cognizable, correct? So our position, yes, is that if in the plea agreement you expressly say, I am waiving my right to appeal on the grounds that the statute in my sentence does... Every other circuit has something broader than the Fifth Circuit. Virtually all of them have something for constitutional errors of the nature that Justice Gorsuch was talking about, either under a miscarriage of justice rubric or under a plain error or unconstitutional violation. So this is not floodgates that are opening. Whatever is being appealed now is pretty narrow. It's a small fraction of the plea agreements are being appealed. And those that are are, there's an even smaller fraction where there's any time being spent on them. So waving a flag, talking about floodgates opening, seems rather exaggerated by the government? So the burden that we experience in the circuits right now really depends on the way that this exception is described in the circuits. In the circuits that have open-ended exceptions for all constitutional claims, the U.S. Attorney's offices do report that to be a significant burden because it's quite easy to characterize even garden variety claims as a due process violation, as I think this case illustrates. In circuits that more carefully circumscribe their exceptions to two or three discrete situations, it is admittedly less of a burden. But the problem is that whether we get the benefit of our bargain, which was to not have to litigate an appeal, just turns entirely on the defendant's choice because if the defendant chooses to raise a miscarriage of justice exception. If you're not happy with the bargain, do what you're threatening to do, which is go ahead and prosecute them. But, again, our whole purpose of entering into the appeal waiver is that we wanted finality and we didn't want to have to keep litigating. But the problem with the finality is that you're basing it on the good faith of a third actor, meaning you're depending on a district court judge, or they are, a district court judge, to follow their constitutional and statutory obligations. I would think it's unenforceable to enter a contract that says you are going to be sentenced by a judge who does not have to follow the law. That is very much not what an appeal waiver says. That's exactly what you're saying. Not at all, Your Honor. That's exactly what you're saying, which is if the judge uses impermissible race factors, impermissible sex factors, religious factors, that can be waived. That's saying that a judge, you're entering a contract that says if your judge is biased, if he doesn't follow the Constitution, if he makes plain error judgments that are clear and undisputed, there's no remedy for you. So, again, an appeal waiver is not saying you can be sentenced however you want by a judge. The judge is oath-bound. It doesn't have to follow the law all the time. The appeal waiver is just saying the final decision-maker is the district court. And, by the way, that was the system that existed for 100 years in this country. Just out of curiosity, what's your backline position?  So we think that if this court is going to go in the miscarriage of justice route, again, we don't really see a basis for that in contract law, but if you're going to go that route, our strong preference is that you follow the circuits that have basically done what the Fifth Circuit has done, but just with one or two more exceptions that seem to capture some of the concerns that people have here. So we like, for example, the Seventh Circuit's test. I would put a little bit of a gloss on it for precision, but what I would say are the three circumstances that would be qualifying as a miscarriage of justice would be a sentence that's explicitly based on a constitutionally impermissible factor like race, two, a sentence or condition that is categorically unlawful for the statutory offense of conviction, and three, a sentence reached without even a minimum of civilized procedure. That's the example of, you know, the arrangement. Why would it not be sufficient to say miscarriage of justice on the assumption that everybody who's going to be applying that standard knows it's a high bar, has seen it before, has thought about it before? The idea of, you know, defining it into three discrete situations is not usually what we do when we speak of miscarriages of justice, and yet, you know, everybody gets that it's a high bar. The problem with setting the high bar is not that we're concerned that judges won't know what constitutes a miscarriage of justice. The problem is that defendants won't know, and they may well think that their case does present the miscarriage of justice, and that's to litigate it, and that deprives us of the benefit of the bargain, which was to not have to litigate it. That's right, but if that's the case, that kind of challenge can be easily dismissed. I mean, I guess I wouldn't think that that would take very much of anybody's time. You know, we do end up having to brief the merits of these disputes because courts will sometimes just ask for more briefing. The circuits that have this more open-ended waiver, pardon, open-ended exception, they do report a more serious burden to litigate it. So we do think that capturing the discrete kind of buckets of cases that do seem to give everyone concern, and I think those three do really capture the universe of what people are worried about, the categorically impermissible sentence or categorically impermissible condition, the sentence by an orangutan, the race-based sentence. I think that is the universe, and so just limiting it to those three and making very clear what those exceptions are and then applying them to this case rather than signaling to lower courts and litigants that this is a borderline case, I think, would be far preferable. Did you say ineffective assistance of counsel is one of them? Yes, of course. I think we're all taking it as given that ineffective assistance of counsel is one. And the sentence exceeding the statutory maximum? So I want to be careful about how I define that. Because you used categorical rather than statutory, and I want to know what that is. Yes, so what I'm getting at with that is I think what everyone is worried about when they're talking about this sort of statutory maximum thing is the idea of, like, you pleaded guilty to an offense that carries 10 years and you get sentenced to 15. So I'm trying to capture that, but what I'm trying to exclude are things that some courts have said fall within a statutory maximum exception, which are things like whether your restitution was proximately caused by your conduct, whether certain prior offenses qualify as act of predicates. Courts have sometimes said that those fall within a statutory maximum exception on the idea that if they're correct about their claim, your sentence exceeds what Congress has lawfully authorized. And we think those types of claims are really what we have bargained to not have to be litigated. We have bargained that the final decision-maker on those issues will be the district court. What about supervised release conditions? So I asked Ms. Black this, but supervised release conditions can be challenged on appeal, notwithstanding an appeal waiver, if? They are categorically unlawful for the statutory offense of conviction, same as the sentence term. So that falls in my second bucket as well. What is categorically unlawful when you're applying it to supervised release conditions? I mean, I know what it means when you're talking about the statutory sentence. I think that refers to the type of condition that there's really never any justification for for this offense. I mean, like a condition like you can never get pregnant during supervised release. Is there a term that, because we have to write an opinion, that's going to capture this? That's why we think categorically unlawful is sort of the best that we can do. We don't want to have to be dealing. I don't think that captures it. I mean, the issue is we don't want to have to be dealing with questions like, you know, was this sufficiently justified on the record? Is there enough stuff in the record to support this? Did the judge make enough fact findings? Those are exactly the kind of reasonableness issues that petitioner says are out of bounds, and we don't want you to just be able to call it a due process claim, and then all of a sudden we are doing those reasonableness inquiries when we have bargained not to. And, again, I want to be clear, when we're bargaining for this, this is to the defendant's advantage. I mean, there's a reason that the defense bar does not want to go the route that Justice Jackson proposed of getting rid of all of these altogether, because this is something of great value to the government, and so it is a bargaining chip for the defendant. Sorry. Go ahead. I appreciate that, but I guess what I'm a little surprised about with the government's hard-line position is that I can't quite figure out whether you are sticking with the contract's idea or not. You've said many, many times that this is about the bargain and the government is bargaining, not the litigate, and that's what we really have to care about. But as Ms. Blatt points out, every contract's regime that I'm aware of has some exception where the court is looking at the fairness of the bargain, where there's some consideration of the different degrees of ability to negotiate, the fact that you might have people who are being coerced into accepting this kind of deal, even though it's not knowing and voluntary. The court is policing that. And the government's position here seems to be that we are not supposed to be caring about that. We just need to focus on the fact that the government has made this deal, that it's not going to want to litigate any more of these cases. And so it kind of brings me to Justice Gorsuch's original point. Like, that seems kind of unconstitutional in a way, that the primary value here is to prevent the government from having to litigate appeals when we're talking about people's constitutional rights. And so I'm just trying to understand, is it your position that notwithstanding the contract-like nature of this endeavor, we are not to be treating this the way the courts ordinarily treat contracts, which is to consider these kinds of exceptions? I'm really glad you asked this question because I think this is a really important point for us. Our position is not that contract offenses do not apply to plea agreements or to appeal waivers. It is that the contract offenses that Petitioner has raised here fail. They fail because the subsequent sentence that a defendant receives under just ordinary principles of contract law, the ones that Petitioner has relied on here, do not make the agreement against public policy or unconscionable or frustrating. But wouldn't you have to project at an individual level? Like, I don't know how you could categorically say, we allow for these defenses but they're never going to apply in this situation because something like the fairness of an agreement really takes into account what's going on with respect to that particular case. So this is why Justice Kagan is, I think, resisting the granular statement of what counts as a miscarriage of justice because we could look at a particular case and say, this bargain, this scenario is unfair because it relates to the kinds of things that my colleagues have pointed out. Right? So if we're in contract world, and I'm going to bracket the miscarriage of justice world, which I think if this court is going down that road, it's not on the basis of contract doctrine. It's something else, some other kind of policymaking. No, no, no. Let's fold the miscarriage of justice concept into something like public policy because you agree that public policy is an exception, right, under the contract world. And one would think that if what is happening here is a miscarriage of justice, we would say that that's against public policy. So let's put it under that umbrella. Sure. I'm happy to talk about public policy exception. Under contract doctrine, again, I'm assuming we're in contract world. Under contract doctrine, the question is not whether the sentence is against public policy. The question is whether the agreement is against public policy. And the agreement to waive your right to appeal is not against public policy. It's not against the public policy of the appeal right statute because the policy of the appeal right statute is one of defendant choice always, and it's not against the policy of the underlying, you know, say constitutional amendment you say is violated. What about the Sentencing Reform Act, which says that appeals are important, that they incentivize the court and the parties to actually follow the law, follow the guidelines, not issue these egregious sentences, right? We have a congressional policy that, in fact, revamped the entire sentencing system to allow for appeals. So to suggest that an appeal waiver is not against public policy, I think, runs up against all of that. But, again, our system still, even after the Sentencing Reform Act, leaves it as a matter of defendant choice whether to exercise that appeal. That's the question today. That's my question that everybody else has given up, but I'm still working. My question is should it be left as defendant choice given all of these problems, given the fact that it doesn't seem to advance anything other than the government's interest in not wanting to litigate, you know, these kinds of issues. Should it be left to defendant choice in this circumstance? It definitely should, given that Congress has left it to defendant choice. I don't see a basis for this court to upend that. And then as to the idea that all we're doing here is protecting the government's interest in finality, no, I mean, this is a bargaining chip for defendants. The appeal waiver is valuable for us, so here a deal with an appeal waiver was worth dropping nine charges for a petitioner. I have no idea what a deal without an appeal waiver would be worth, but basic economic logic suggests it would be less, different charges. Two questions on that. One is your answers to Justice Jackson about the contract approach, as you're calling it, you argue you win under contract principles. You don't argue that they don't apply.  So why doesn't this defendant get a remand to argue contract? Because we win categorically. The subsequent sentence that the defendant receives is never a basis to find that the contract is against public policy. If I might, the Fifth Circuit hasn't addressed that question. Nobody has addressed that question. This court hasn't addressed that question. Why wouldn't we remand to allow the Court of Appeals to address that question? I think what Petitioner has asked this court to do is to say that in some instances an appeal waiver could be against public policy, and I'm asking the court to say it never could. No, no. What Petitioner is asking us to say is the Fifth Circuit's rule that there are two and only two bases is not correct, and that I should be allowed to try a contract defense. And you say you've got good contract defenses. God bless you. How about litigating them? To make it a possibility that they try to raise a contract defense, I think Petitioner needs to show how any contract defense could, in theory, in the right case, give relief here. And there is no public policy that an appeal waiver violates based on the subsequent sentence. But if we're not prepared to decide that in the first instance because no court has passed on that question, do you object to a remand to have a court? Very strongly object to a remand, particularly because of what it would signal about the fact of this case. You could say it may be possible in some case, but we would really urge you not to suggest that it would be this case because this is the type of appeal that even the circuits that have broad standards, I think perhaps excepting the Ninth Circuit, would categorically not find as a miscarriage of justice. And if you suggest otherwise, that truly will open the floodgates and cause a big problem. Because an issue that hasn't been litigated should never be litigated. Okay. All right. And then you tout the benefits of these deals. Let's take this case as an example. The defendant here pled guilty to one count of stealing $32,000. He was sentenced as if he was guilty of all the counts the government dropped and a half a million dollars' worth of stolen money. How, if I think about this as an unconstitutional conditions possible problem, we normally say that there has to be some nexus between what you're giving up and what you get, and some proportionality. And if he's being sentenced as if he committed all the crimes that weren't charged, it's pretty hard for me to see what benefit he's getting from an appeal waiver here. Can you help me with that?  So, first of all, on unconstitutional conditions, there is no constitutional right to an appeal. There's a statutory right. Yes, but it's not an unconstitutional condition. Well, as a matter of due process, you're entitled to that statutory right. I mean, no, I think that you're just constitutionalizing the appeal right. If you say that as a matter of due process, you're entitled to the statutory right. But setting that aside, I think your second question is about... I think maybe you'd better set that aside for my purposes, at least. Understood. Setting that aside, your second question, I think, is about if he got a good deal in the end here, if, in fact, the sentence is one that his bargain to drop nine charges proved to be a good deal. As my friend has said, he obviously thinks that it ended up not being a good deal, but that is not a basis to undo a bargain. And that's not a basis to find a bargain to be unconscionable. Unconscionability isn't about harsh results later when it proves you made a bad deal. Unconscionability is about a deal that you made that at the time you made it is so one-sided, no rational person would enter into it, and that was not this deal. If the government's position is a defendant can knowingly and voluntarily give up his appeal rights, I wonder what the government would say a defendant couldn't give up. Could a defendant give up, for example, his right to go to church after his conviction or to own a gun after his conviction or his entitlement to federal unemployment benefits after his conviction? Again, this comes back to my point that an appeal waiver is not an agreement to be sentenced unlawfully. An agreement to be sentenced unlawfully would be against public policy. Oh, okay. Because performance of the agreement would be against public policy. That's an interesting test. Okay, so if it's an unlawful sentence, he should be able to appeal. Not at all. No, no, no, no, no. If the agreement is to receive an unlawful sentence, that is an agreement against public policy. But here the agreement is not to receive an unlawful sentence. The agreement still contemplates that the judge is oath-bound. It's an agreement that the final decision-maker on your sentence is the district court, and that is not an unlawful agreement. No public policy forbids the district court from being the final decision-maker on your case. That was the status quo for 100 years. Can I ask you a question, Mr. Cavoli? Mr. Cavoli, I'm having a hard time tracking exactly what the government's position is, so I asked Ms. Blatt, explain to me how these defenses that you're proposing fit within the contract analogy. And I don't know, I sense some going back and forth about whether the contract analogy is a perfect fit so that all these defenses are available, and if so, I'm not really sure how the miscarriage of justice backline position fits in unless we try to shoehorn it through public policy. So explain to me what the government's theory is here. Sure, so Petitioner has litigated this as a contract doctrines case, saying that all these contract defenses apply. Our position is if we're going on contract defenses, none of them apply. Let me ask you that just as a matter of first principles. Is it the government's position that this should be litigated as a contract case? I do think so, and I think that there's not really another source of law that Petitioner has identified to lodge this miscarriage of justice exception. It's not contract principles, the government. Do you think of this? Do you think that Petitioner is right to litigate this? Because you've gone along with it, and you've said if we're talking about contracts, it doesn't work. But do you think of this challenge as something to which the contract analogy should apply? I do think that this type of argument is one to which the contract analogy should apply. There's no constitutional right to an appeal, so I don't think it makes sense to say that there is a constitutional right to an appeal in certain egregious cases, so the Constitution isn't really a home for this doctrine. And other than that, I think you would just be engaging in some kind of federal common-law policymaking where Congress… Well, then again, is the position… No, go ahead. So is your position that the contract analogy applies, but none of the contract defenses work in this context? Correct. Okay. So when you're making this concession about, you know, potential miscarriage of justice, et cetera, you're just kind of pulling that from the ether? So there we're assuming that you are kind of going outside of contract doctrines, and you are trying to find as some sort of policy or maybe constitutional backstop some safety valve, and we think if you were going down that road, the safety valve I proposed to Justice Kagan is the right one, but again, we do not think that that is the right way to go. Well, why isn't Justice Gorsuch right then? I mean, are we supposed to march through every single available contract defense for their statement and say, this is why this couldn't apply here, this is why that couldn't apply here? Petitioner has come up with four potential defenses. None of them applies. I think that you can just categorically say, as to his case. No, no, no. Categorically, when a subsequent sentence does not make an appeal waiver against public policy, it doesn't make it unconscionable, it doesn't make it a breach of the implied duty of good faith, it doesn't frustrate the shared purpose that goes to the essence of the bargain. Just categorically, those defenses all fail. If there are other defenses out there, it was on Petitioner to raise them, and he hasn't. Justice Kagan. Is the premise of your answers to Justice Barrett that this Court has no power to establish rules intended to safeguard the integrity of the judiciary? That is not our position, but the rules need to be lodged, I think, in some source of law. There's no congressional source of law, there's no really constitutional source of law, given that there is not a constitutional right to appeal. That was my question. In other words, you're saying that we have to point to a statute, we have to point to a particular constitutional provision to set some boundary lines on what judges can do in a task that is supremely a judicial one. We can't just say, you know, there are some things that judges can do that would be a miscarriage of justice, and we don't need to point to a statute to be able to create a rule that polices the judiciary to that extent. I think particularly because we are in the world of federal criminal law and federal criminal procedure, which is highly regulated by Congress and the Rules Committee, that's an especially dangerous place for this Court to be making policymaking, even though I understand that it's policymaking about what judges should do. It's policymaking about which court should be the last word on certain types of cases, and I think that really is the province of Congress and the Rules Committee. If you disagree with me and you are going down the road of a miscarriage of justice exception, again, we strongly urge the Court to cabin it to the circumstances that really gave everyone a chance. Whatever the miscarriage of justice exception says, whether it's less cabined, whether it's more cabined, you're saying that the only way that we can do that is by referring to contract law principles or by finding, which I don't think exists because people would have found it, some statute that allows us to do that. Or constitutional principles. Or I think you're maybe gesturing towards something to do with the supervisory powers of the courts or something like that, but this isn't really a good home for the supervisory powers because this isn't about supervising the conduct in their courtroom. This is really about making rules about when a decision should be final, whether that's at the district court stage or the court of appeals stage. That's kind of bread-and-butter federal criminal procedure stuff that Congress deals with and the Rules Committee deals with. Thank you, counsel. Justice Thomas, anything further? Justice Alito? Well, can't we say, to continue your colloquy with Justice Kagan, can we not say that a plea bargain has some attributes of a contract, but it's not like an ordinary contract? I don't know. Even the amici supporting Mr. Hunter say, and this is their Cato ACLU brief, point 1B, plea bargaining is no ordinary contract negotiations. So we can adopt a principle that is informed by contract law without taking the position that you now seem to be taking, which is this is just like any other contract, and all of the contractual defenses that might be recognized are available here. I find your position really hard to understand. On the one hand, you say you don't want to be burdened with having to litigate a lot of appeals that are taken by defendants who have entered into an appeal waiver, and then you're happy to have judges decide, don't you think that anything that any objection that a defendant might have could be characterized as unconscionable? And we occasionally see issues of unconscionability in cases involving arbitration, and boy, some state courts really go to town with the unconscionability argument. But you're happy to deal with all those. I'm definitely happy to say why categorically appeal waivers are not unconscionable, if that's the question. If the question is whether there should be some other rule that informs the court, yes, I agree. Plea bargains are not perfectly like contracts, so the analogy doesn't hold in all respects. But you would have to say that there's a constitutional dimension. I mean, there would have to be sort of some source of law that is informing what rule the court makes if it's not a contract rule. And there's not really a constitutional principle at play here, and I'm not really sure another source of law. So, no, I want to be clear. We've been litigating this case as a contract case because that's how Petitioner has brought this. If the court wants to say that there are aspects that are not like a contract and other rules should apply, it would just need to ground those rules, I think, in something. I'm happy to explain, though, why. Okay, thanks. Counsel, on the second question presented, there is a way of reading that transcript in which one could say the judge basically said, I'm going to impose the condition, come back to me later if you disagree. And then he mentions the right to appeal, that there was permission to appeal at least this condition. Why can't we read that colloquially as such? Because the district court doesn't have authority to modify the party's agreement. Well, then that goes to the silence that was the government's position there. All right, what does that do to the rightness question that Justice Barron had? Presumably, you would argue at any point in time that the waiver applies, correct? That depends on the language of the agreement here. This agreement doesn't bar Petitioner from seeking modification of the condition of supervised release, so he could do that. The Fifth Circuit has said that an appeal from the denial of modification is covered by a waiver if it's the type of appeal that could have been brought from the beginning. Isn't that the vicious circle you're putting this defendant in, isn't it? I don't think we're putting the defendant in any circle. I think the defendant entered into an agreement, and this is part of the deal. So you're saying, tough luck, because the Fifth Circuit won't let you do it, so we should let you do it. We should let you say it's all right. It is possible, I think, under the terms of the Fifth Circuit's doctrine, that if the type of appeal that he brought were more as applied and not the type of thing, he really could have brought from the beginning, given that this appeal waiver doesn't cover appeals from modification, it could be allowed. You admitted that it would be unconscionable to contract to have a racist judge decide the case, correct? I admitted it would be against public policy to say my sentence will be decided on the basis of race. But it's not, in fact, against public policy to have a racist judge sentence you. Yes, the sentence would be against public policy, but the question is whether the agreement is against public policy. And, again, the agreement is not to have a racist sentence. But that's what you're saying. The agreement is to have no appeal, and the agreement to have no appeal is not against any public policy. Even though it involves a breach of the duty of good faith dealing, which applies to third parties that you delegate contract rights to. But a judge is not a delegee under the agreement. Oh, you can't have it both ways. He is either a judge acting in conformity with the law, or he is a delegee subject to the good faith and fair dealing condition. You want to pick and choose defenses. Not at all, Your Honor. He is a judge acting in good faith in the law, but a presumption of the entire appeal waiver is that the defendant might not think that the sentence he ultimately receives is unlawful. That is kind of the core premise. It's not a question of unlawful because it's a question of whether he's violated statutory rights, whether he has used impermissible constitutional factors, whether he's violated statutory limitations, imposing restitution when the statute doesn't provide for it, and the agreement doesn't contemplate it. He's acted outside the bounds of expectation. The relevant expectation under contract doctrine, again, I'm assuming now we're in contract world. The relevant expectations are not the party's expectations as to what sentencing outcome will occur. Contracts hold even when unforeseen and unexpected things happen. The relevant expectation is how the party is expected their agreement would operate, whatever the outcome is. So why isn't it, and going back to Justice Kagan's question, we all assume that judges will act lawfully. Not that they can't make errors in calculations, but that they'll act lawfully and not unconstitutionally. We do assume that, but the premise of the agreement here is that both sides might not think that the judge has acted lawfully, and if the defendant thinks the judge hasn't acted lawfully, he can't appeal. That's kind of the whole premise of this agreement here. That is the assumption. We're going around in the circle we started with. Justice Kagan? Justice Gorsuch, any further? Do you agree that some prospective waivers are just unenforceable? So, for example, you cannot prospectively waive your Title VII rights. Correct. Yes. This is quite different, though. I mean, you can't prospectively waive your right to sue under Title VII, this court has said, because the right to sue is basically integral to the substantive policy of Title VII, but the right to appeal is not integral to the substantive policy of any constitutional amendment or statutory amendment or anything like that. And we know that because it gives— Except that Congress granted a right to appeal just as it granted a right to pursue Title VII remedies. Waiving the right to appeal also isn't against the policy of the right to appeal, because that would just mean we could never have any statutory waiver. Well, we didn't have appeal waivers until about three minutes ago. We also didn't have appeals for 100 years, respectfully. Yeah. We didn't have sentencing appeals at all. And we also didn't have plea agreements before that, if you really want to go back, counsel. So I'm not sure that works for you. And then with respect to contract, in what you call contract world, you agree that at least in principle a defendant would have contract defenses, correct? Yes. Okay. Thank you. Ms. Kavanagh? Let's see. I appreciate you're having alternative arguments and a party having alternative arguments. I think that's helpful because you don't know where the nine of us are going to go. But then it's important for me to keep clear on what the alternatives are. Your first one is the contract, no exceptions. Okay. The lower courts have not gone that way, have rejected it. Assume I'm not going that way. Sure. Okay? Just me. Sure. Okay. So first alternative out for me. On the second alternative, I think you raise a good point. What source of law are we doing? But all the lower courts have been doing it, right, all the courts of appeals. And I could be federal common law, could be supervisory power, but it's there. And I think I'm just taking that as a given. Yeah, courts have done it. The way this has arisen is courts, you know, in the early 2000s, late 90s, often confronted with this would say, yes, these are okay. But, of course, we would never enforce it in XYZ circumstances without really explaining why. But, yeah, they have said that. But they have said that. At this point, I take your technical point, and maybe it's more than technical, where does that come from? But it's everywhere in the courts of appeals. My old court, every court, right? And it might be interpreting the federal criminal rule. It might be supervisory power. It might be federal common law. It might be going to what an appeal is in the statute, justice courts. But it's there. Then it's just what are the exceptions, right? Yes. Okay. So if we're on that, it's just what are the exceptions and whether to identify a general miscarriage of justice or to list three or four and then to say they're not exclusive, correct? Correct. Okay. Correct. And there's a pretty good consensus of exceptions in most of the courts of appeals. Correct. Correct. And the ones that we've articulated, I think that's the case. I think this is not so hard in the sense that there's a kind of defined list. What happened here is the list is shorter than what most of the courts of appeals have.  If this court is going down that road, I think saying there's still a defined list, there's just, you know, two more bullets on the list. Exactly. You can live with that as long as the last bullet isn't catch-all, know it when you see it, if it's sufficiently egregious, because that is a real problem for us. If you just say the Fifth Circuit has one too few bullets, two too few bullets, that makes sense. But, again, we don't think there are any bullets that could capture petitioner's argument. Well, in the D.C. Circuit, we did have a bullet that said results in a miscarriage of justice, and I don't remember the place falling apart. So I do think that if this court were to announce a standard like that, we would see kind of a flood of that. And there has also, at this point, been kind of enough common, I guess, you know, built up around it that courts have denied those miscarriages enough that defendants may raise them less. But if this court were to announce that standard, we think defendants would raise them a lot. And, again, I'm not suggesting courts would find miscarriages of justice constantly. The opposite, but that's the very problem. I mean, if we're looking for the needle in the haystack, but in every case we're being deprived the benefit of our bargain, that's the problem. The ultimate benefit is the resource, right? Correct. I mean, we enter into 45,000 plea agreements a year. And ultimately, it's a judge-protective thing too, because the judges are, you know, got all that. The amicus brief of the Association of Federal Defenders says, if we are too strict on this, there are going to be fewer plea bargains, so the resource problem is actually going to be worse. Do you want to respond to that very quickly, because I'm using time? I don't agree with that. I mean, the most common alternative to entering into a guilty plea pursuant to an agreement is not a trial. It's entering into a guilty plea without an agreement, where the United States gives no concessions and the defendant retains his right to appeal his sentence. That's, I think, kind of the most common alternative that we have now, and that's, I think, where things would get channeled. So I think we'll still have pleas, but those are pleas will probably be less favorable to defendants because we're not giving the concessions. Thank you. Justice Barrett? Counsel, would the government be amenable to having defense counsel insert qualifications on the right to appeal and bargaining for the kinds of exceptions that some of the courts of appeals currently allow? Yes, I'm very glad you raised that point. Defendants are always free to do that. I mean, again, I want to be clear, it's a very important term to us, so in some cases we won't budge, and in many cases we won't budge. But it's case by case, it's district by district, and we do enter into plea agreements with carve-outs for constitutional claims, carve-outs that limit the appeal waiver to only certain guidelines ranges, all the rest, and we have, in the appropriate cases, entered into plea agreements with no sentencing appeal waiver at all. So it really is a matter of defendant choice here. So you've emphasized that if we're going to do something other than the contract analogy, we have to find some source of law in which to ground it, and you've been pressed about supervisory power. I'm wondering whether, in addition to supervisory power, another rationale is that this isn't a pure contract agreement because it has to be accepted by a third party. The district judge has a role in the process. And hence, because the district judge has a role in the process, there have to be some parameters to what the district court does in that process. And so our supervisory power over, it's not just purely between the government and the defendant, so our supervisory power over the third party in that process is a source of law that can justify some of these exceptions. I see that argument. I think that could make some sense. I mean, I want to be clear, it's often the same judge that approves the plea deal as the one who sentences. It's not necessarily, but if you're just sort of saying the district court, not specific judge, I see that point, and if that's how this court wants to ground a series of exceptions, I think that makes sense. I want to be clear. We have gone sort of hard on the contract doctrine here because that's how Petitioner briefed this case, but I'm not trying to suggest that this court lacks power. I would prefer, I guess I'm still a little bit confused when I asked you that before, like are you only talking about it in terms of contract because the Petitioner did? You said no, you do think of it as a contract? Because there's no constitutional right to appeal, and Petitioner hasn't briefed it as a supervisory power or on this theory that you've suggested, we do think the most logical place would be if the avenue that you've suggested is the power to supervise the accepting of the plea. I mean, I think that could make some sense as an avenue to accept these carve-outs. Okay, thanks. Justice Jackson? I just want to clarify one factual point that I thought you were exploring with Justice Barrett. Are appeal waivers required in every district across this country? My understanding was that this is not uniform. So, I mean, they are never required. It's a term of a voluntary contract. I understand, but aren't there districts in which the background principle is not to put an appeal waiver in plea agreements? I'm actually not sure if there are any U.S. Attorney's Offices that have a stock plea agreement without an appeal waiver, but some are more willing to bargain it away than others. All right, and one other thing. You have repeatedly honed in on the nature of the appeal waiver. You say an appeal waiver is an agreement to let the court be the final arbiter at sentencing. Is that what the government's position is? Yes. What I'm wondering is whether that same position would hold with respect to an agreement pertaining to the trial. So, let me give you a hypothetical. Suppose we have a defendant who wants to go to trial, but he'd like to lessen his potential sentencing exposure in the event that he's found guilty. Could he contract with the government to prospectively waive his right to appeal any and all trial errors? Errors, in other words, we're leaving it to the trial court to make all the calls with respect to evidence, et cetera, and I'm not going to, as a matter of contract, appeal any of those errors. I'm not prepared to commit on all trial errors, but, of course, you can prospectively waive right to, for example, certain evidentiary objectives. Why wouldn't you commit on the same principle? If the idea is that we can contract around making the trial judge be the final arbiter, which is what I understood you saying. I see what you're saying, saying that there would just be no appeal from the trial. Yes, I would think that would be okay. And you would think that there would be no public policy interest of the court or the public in ensuring that people get a fair trial. Again, I'm really wary to get out ahead when we're talking about these trial issues, which are out there. No, I'm not asking you to get out ahead. I'm testing your principle that there is no problem with an agreement to prospectively appeal errors in a proceeding that will ultimately impact, whether it's the trial or the sentencing. You said the reason why that's not a problem at sentencing is because the parties can agree to make the sentencing judge the final arbiter. So if he makes a mistake or not, he believes that's the right answer, and you're not going to appeal that. All I'm doing is transporting that same principle to the trial, and your concerns about it are precisely the concerns that I have with respect to the sentencing issue. I just don't know if there are issues at trial that are not waivable due to some external public policy that doesn't apply at sentencing. Not the issue, the ability to appeal it. That's the point you keep making with respect to the sentence. So regardless of how fundamental the error is, you say at sentencing we can agree that the trial judge is going to make the final call or the sentencing judge, and all I'm asking you is couldn't you, under your logic, do the same thing with respect to trials, and wouldn't that be a problem from the standpoint of ensuring that people actually get a fair trial as a matter of public policy? I don't think so, again, given that we didn't have the right to criminal appeals for 100 years. Thank you. Thank you, counsel. Rebuttal, Ms. Black? Thank you. Number one, just some data points. 1992 was the first court of appeals that said defendants can't be deemed to have defendants entirely at the whim of the discretion of the district court. So that's Fourth Circuit. 2009, D.C. Circuit was the last circuit to recognize exception. So all 11 circuits have weighed in, and I don't see the government running out of resources. In terms of authority, they're completely separate doctrines. One is the contract doctrine, and one is miscarriage of justice. In terms of the authority, it does, I think, come from an inherent equitable power. You could think of it as the government trying to see specific performance. You could think of it as supervisory or inherent, or in terms of separation of powers, we're not going to let sentences bring the judiciary into disrepute. And this would be a sea change. Number two, all the cases that I mentioned were not hypotheticals. They were all real on pages in our reply brief and our opening brief about the castration, et cetera. The Fourth Circuit case cited by Cato is a case where the district court 20 times knowing his conduct would be shielded by the appeal waiver. So this is a concern. Number five, on remand, in terms of why we should get a remand. We haven't even briefed the unconstitutionality of this. The government says this is silly, but they've never asserted a justification for the mandatory medication condition. They've never even said why it's there. If they're really worried about resources, how about just confessing error and let the defendant just serve out his supervised release? It's not that complicated. Number five, in terms of the contract, how it is as a matter of law, not unconscionable or frustration of purpose. This is hornbook contract law. Billions of contracts have open-ended terms, quantities, discretion of a party. Those are things that the parties don't yet know is going to happen. So this happens all the time. You have an open-ended contract. That's what an appeal waiver is. Also, I forgot counting how many times the government kept saying benefit of the bargain, deal, agreement. And all we're saying, it is beyond hypocritical to say the government is entitled to enforcement, and using contract law. They literally brief their cases using contract law. It is inconceivable and hypocritical and embarrassing to say a criminal defendant has no contract defense, at least when the government is seeking to enforce the contract. Thank you. Thank you, counsel. The case is submitted.